## MUSSER v. GRAY.

### No. 14,326; November 28, 1892.

31 Pac. 568.

**Judgment — Satisfaction.— M. Held a Judgment Against G.,** which he agreed to release if G. would deliver him a deed to certain property, which he did. Prior to such agreement, G. had made an assignment of all his property for the benefit of his creditors. M. knew that G. had made an assignment, but denied knowing that it included the specified property. G. made no attempt to conceal any fact. Held, that an order directing the entry of satisfaction of the judgment was proper.[1]

APPEAL from Superior Court, City and County of San Francisco; J. McM. Shafter, Judge.

Motion by E. P. Gray for an order directing the entry of satisfaction of a judgment against him held by J. W. Musser. From a judgment of the superior court of San Francisco county, affirming a judgment granting the order, Musser appeals. Affirmed.

Mich. Mullany and Wm. Grant for appellant; A. Everett Ball for respondent.

TEMPLE, C.—This is an appeal from an order directing the entry of satisfaction of the judgment. The order was made on motion of defendant, on the ground that "said plaintiff has received satisfaction for said judgment, and that said defendant has been duly discharged by the insolvent court from said judgment." The order appealed from does not show upon which of these grounds it is based. It appears that plaintiff recovered a money judgment against defendant, February 18, 1887; that a writ of attachment had been theretofore

---

[1] Cited and approved in Blake v. Farrell, 31 Utah, 113, 86 Pac. 806. In that case one having succeeded in an attachment case "failed, neglected and refused" to credit the fruits of the attachment, so far as they would go, upon the judgment, proceeding rather to collect from the judgment debtor through the processes of the court the whole debt. Upon the debtor's application the court ordered a partial satisfaction.

issued, which had been duly levied upon a certain tract of land claimed by defendant in San Diego county; that after the entry of judgment an execution was issued and levied upon the same land, under which the land was sold to third parties for $37. The further sum of $250 was also collected by the sheriff on said execution, and after deducting his costs he paid to plaintiff's attorney $247.26, properly applicable to the judgment. Nothing more has ever been paid upon the judgment, but in defendant's affidavit, which was one of the papers upon which the motion was based, it is shown that on the 20th of May, 1887, defendant entered into an agreement with plaintiff and one Abbott, who also had a judgment against defendant, for the release and discharge of the judgment, which agreement is as follows:

"In consideration of the delivery to Henry Abbott of a deed to the property of E. P. Gray, situate in San Diego county, state of California, we and each of us hereby agree that we will release the said E. P. Gray from any and all obligations to us or either of us owing, except in so far as his indebtedness to us is secured by virtue of an attachment levied upon the said property of the said E. P. Gray in said San Diego county. It being the intent of this agreement that the said parties hereto shall have the right to enforce their claim against the said Gray in so far as the same relates to the property of the said Gray situate in San Diego county, aforesaid, but to release him from any indebtedness to us remaining after realizing upon the said property.

"Dated May 20, 1887.

(Signed)     "J. W. MUSSER.
             "HENRY ABBOTT.

"Signed, sealed, and delivered in the presence of
             "W. H. CHICKERING."

That the deed mentioned in the agreement, by request of both plaintiff and Abbott, was executed and delivered to W. H. Chickering for them. It is then shown that defendant commenced proceedings to secure his discharge as an insolvent debtor under the laws of this state. Such proceedings were instituted in June, 1888, and a certificate of discharge was issued therein on November 12, 1888. A large portion of the record and of the briefs of counsel are taken up with questions in regard to the insolvency proceedings, but, as the dis-

charge could not justify the action of the court below, the points made in regard to these proceedings need not be considered at length. It does not appear that the claim of plaintiff was proven against the insolvent. Although a creditor loses his debt through such proceedings, that does not make it his duty to surrender and cancel the evidences of his debt, if any he has. On the contrary, the statute expressly makes the order and certificate only prima facie evidence of the release of the debtor from his debts, and allows the creditor two years to discover such fraud as will avoid its effect. Such discharge will perhaps prevent the creditor from getting any benefit from his judgment, but it does not impose upon him the duty of entering a satisfaction of it. Unless it did make it the duty of the plaintiff, the court had no right to force him so to enter it.

The only matter, therefore, to be considered is whether the agreement to accept a deed to the land in San Diego county, and release the debt except as to the reserved right to prosecute the attachment, will justify the order. Upon the hearing of the motion a counter-affidavit made by plaintiff was read. He admits that he signed the release, but charged that it was obtained through fraud; that defendant had become greatly indebted, and on the 6th of December, 1886, executed and delivered to one Henry P. Wood a deed of assignment of all his property, including the San Diego lands, for the benefit of his creditors, and that said Wood ever since has been and now is the owner of said lands for the purposes of the trust; that he did not know when he signed the release that the San Diego lands were included, and that he derived no benefit from, and acquired no rights under, the deed to him; that defendant's brother and attorney, Giles H. Gray, assumed to represent defendant, who immediately after the execution of the deed to Wood absconded; that Giles H. Gray, acting for his brother, continuously gave out, and made it appear and represented to him (affiant), that defendant was the owner of the San Diego lands, and had conveyed them to him (Giles H.), and that he would convey them to said Abbott upon the execution of the release by plaintiff and said Abbott to E. P. Gray; that thus he was led and induced to believe said Giles H. Gray could and would convey to Henry Abbott a good title for the San Diego lands, and that affiant would realize and

obtain ample money to satisfy the judgment; and acting upon and in pursuance of said representations and deception, and not otherwise, he did enter into the agreement mentioned, but he never received any consideration therefor, but the same is void. These statements are corroborated by an affidavit of one A. S. Hubbard, who claims to own a part of the judgment and of the indebtedness secured thereby. Giles H. Gray made an affidavit corroborating the first affidavit of defendant.

In reply to the counter-affidavits of plaintiff and Hubbard, defendant deposed admitting the deed to Wood, but stating that Wood did not comply with the law in regard to such assignments. He filed no inventory as required by section 3461, Civil Code, or affidavit as required by section 3462, Id., and executed no bond as required by section 3467, Id., all of which was well known to plaintiff. That Wood has never been the owner of the San Diego land, in trust or otherwise, and plaintiff acquired through Chickering all the title defendant had to the land. He denies that he absconded or concealed himself. The affidavit of W. H. Chickering was also read. He deposed that he was attorney for Abbott. That an assignment was made to Wood, but that Wood never completed the assignment. That acting under instructions he received the deed for the San Diego lands, and plaintiff and Abbott in consideration of it executed the release. That the transaction was had when real estate was "excited" at San Diego, and it was thought by Abbott and plaintiff that enough could be realized from the property to satisfy their claims. A large portion of the property had been previously sold under foreclosure, but it was thought the decree could be set aside, but the collapse of the boom came so soon that no steps were taken to vacate the foreclosure decree. That there was no attempt made to conceal any facts, and, in the opinion of affiant, defendant and his brother acted in entire good faith. The release was given without reservation, and the deed was received by him in trust for plaintiff and Abbott. In reply to these affidavits, another was read, made by Hubbard, in which he affirms that Wood accepted the deed of assignment, and had the same recorded in this city and county, December 6, 1886, and complied with the law pertaining thereto, executed the bond. assumed the duties, and as assignee sold a large amount of

property, and divided the proceeds among some of the creditors of defendant.

Upon this evidence, is the conclusion of the court reasonable? Appellant in effect admits that he knew that Gray had made an assignment for the benefit of his creditors, but denies that he knew that the San Diego property was included. Whether it was included or not he does not seem to have inquired. No such representations as to title are charged as would excuse him from an examination of the records. The court on the evidence was justified in concluding that the assignment to creditors did not constitute a cloud upon the title acquired, and, while it is said that plaintiff derived no benefit from the conveyance, no facts are stated which tend to show that the failure to do so was caused by the assignment. Chickering's affidavit refutes all presumption of intentional deception. I think the order should be affirmed.

We concur: Vanclief, C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order is affirmed.